UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOSHUAH BARBER )
 )  Case No. 1:08-CV-237
v. )
 )  Chief Judge Curtis L. Collier
HAMILTON COUNTY DEPARTMENT OF )
EDUCATION )
 )

**MEMORANDUM**

Before the Court is Defendant Hamilton County Department of Education's ("Defendant") motion for summary judgment (Court File No. 14) and supporting memorandum (Court File No. 15). Plaintiff Joshuah Barber ("Plaintiff") responded (Court File No. 18), and Defendant moved the Court to consider an untimely reply (Court File Nos. 21, 22). The Court notes Defendant's motion to consider an untimely reply was filed over a month after the deadline for a reply had passed. E.D. TN. LR 7.1(a). Defendant provides no reasons to warrant an extension of time of this magnitude. Therefore, the Court will **DENY** Defendant's motion to file an untimely reply (Court File No. 21) and did not consider this filing (Court File No. 22) in resolving Defendant's motion for summary judgment.

After carefully considering the motion and briefs of the parties and the applicable law, the Court determines there is no issue of material fact and will **GRANT** Defendant's motion for summary judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff is an African-American who was employed by Defendant at Brainerd High School as an assistant principal for the 2006-2007 and 2007-2008 school years. The following facts, unless

otherwise indicated, are taken from Plaintiff's deposition ("Plaintiff's Depo.").[1] On September 13, 2007, Plaintiff was told by a student about a fight occurring in the back hall of the school and pushed through the crowd of students and two or three teachers to attempt to break it up. Plaintiff had used pepper spray in April or May of 2007 to break up a previous fight in a courtyard and had been explicitly warned not to use such a substance or even bring it on campus by Sheila Young, Associate Superintendent (Plaintiff's Depo. pp. 42-48; Scales Memorandum, Court File No. 15 at p. 72). When verbal commands were unsuccessful to break up the September 2007 fight, Plaintiff went to his office to obtain a can of deodorant to use "as a prop so kids would think or assume . . . that I may use mace or pepper spray again" (Plaintiff's Depo. p. 88). However, when he returned, Plaintiff contends pepper spray or something similar was already in the air and he then proceeded to order the students to clear the hallway.

Following the September 2007 incident, James Colbert ("Colbert"), an area director for Defendant at the time, spoke with Plaintiff about his alleged misconduct involving the pepper spray. After discussing this incident, Colbert also questioned Plaintiff about an August 2007 allegation of assaulting a student (Plaintiff's Depo. p. 67; Colbert Depo. p. 47). Colbert then made a recommendation to Dr. Jim Scales ("Dr. Scales"), superintendent of schools, and on October 4, 2007, Plaintiff was suspended without pay pending further investigations (Letter from Dr. Scales, Court File No. 15 at p. 69). Dr. Scales asked Dr. Marvin Lott and James Colbert to work with the Chattanooga Police Department and Board Attorney Scott Bennett to determine the facts

---

[1] Excerpts of Plaintiff's deposition were filed as supplements to Plaintiff's response (Court File Nos. 19, 20), however, the most complete filing of Plaintiff's deposition is included in Defendant's motion for summary judgment (Court File No. 15, pp. 18-57). For purposes of clarity, citations to Plaintiff's deposition refer to the actual pages of the deposition transcript and not the various portions attached to filings in the docket.

surrounding the pepper spray incident and assess what disciplinary action was warranted (Scales Memorandum, Court File No. 15 at p. 71).

Dr. Scales ultimately concluded based on the testimony of witnesses, security video footage, and the inexplicably coincidental timing of Plaintiff's threatening use of a deodorant spray can with a simultaneous discharge of *actual* pepper spray, that Plaintiff "did indeed have pepper spray on campus and did indeed use it on students in violation of a directive from Associate Superintendent Sheila Young" (*id.* at p. 74). In fashioning appropriate discipline, Dr. Scales also considered Plaintiff's prior use of pepper spray in the spring of 2007 as well as Plaintiff's purported choking of a student in August 2007 (*id*. at pp. 74-75). Dr. Scales conferred with the Hamilton County Board of Education ("the Board"), and in February 2008 the Board certified the charges against Plaintiff, if true, warranted termination (Settlement Agreement, Court File No. 15 at p. 78). In May 2008, after a day-long mediation involving Plaintiff, Dr. Scales, and their respective counsel, Plaintiff was demoted to the position of teacher and was retroactively paid at a teacher's salary for the entire period of his suspension less twenty days (*id.*).

Plaintiff contends Colbert and Dr. Scales did not sufficiently investigate the pepper spray incident and made "a decision based on some information [Colbert] got from somewhere" and didn't consider if Plaintiff actually dispensed the spray (Plaintiff's Depo. pp. 112-114). He cites Defendant's more favorable treatment of white coaches for purportedly similar offenses as evidence of discrimination. One coach, Ronald Baker, was suspended for making racist remarks to students and chose to retire before Defendant could take action against him (Plaintiff's Depo. pp. 135-137; Scales Affidavit, Court File No. 15 at pp. 65-66). The second coach, Bill Eller, was accused of being rough on students and lost his stipend for coaching but was allowed to return to teaching

3

(Plaintiff's Depo. pp. 130, 171-173). Plaintiff also references a third coach from a different high school who allegedly assaulted a student and slammed him to the floor (Court File No. 1 at ¶ 17), however, Plaintiff does not know the name, disciplinary action or any other information about this coach (Plaintiff's Depo. at pp. 140-142). Plaintiff insists Dr. Scales, also African-American, "chose to take certain actions and do certain things because [Plaintiff is] African-American versus doing it with someone else" (*id.* at p. 196). This assertion is qualified by Plaintiff's own admission this is speculation and his only basis of comparison are the above-referenced coaches (*id*. at pp. 196-197).

Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), claiming his demotion to the position of teacher constituted disparate treatment based on race. Defendant claims Plaintiff was demoted based on the results of the investigation of the September 2007 pepper spray incident combined with Plaintiff's history of aggressive behavior toward students.

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l*

*Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Plaintiff filed suit under section 2000e-2(a) of Title VII, which provides it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Claims for race discrimination under Title VII may be established in one of two ways. A plaintiff may prove he was subject to disparate treatment using either direct or circumstantial evidence. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Where, as here, there is no direct evidence of discrimination, Plaintiff's circumstantial evidence is analyzed under the burden-shifting framework established by the Supreme Court.

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-804, 807 (1973); *Chen*, 580 F.3d at 400. Under *McDonnell-Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of racial discrimination; the burden then shifts to the employer to articulate some legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to demonstrate the employer's explanation was pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804, 807 (1973). Throughout this burden shifting, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004). The plaintiff cannot rely purely on "mere personal belief, conjecture and speculation" as they are insufficient to support an inference of age [or race] discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).

### A. Prima Facie Case

To establish a prima facie case in the disparate treatment context, Plaintiff must show 1) he was a member of a protected class, 2) he was subject to an adverse employment action, 3) he was qualified for the position, and 4) he was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999). It is undisputed Plaintiff, an African-American, was a member of a protected class, was qualified for his position, and was demoted from assistant principal to the position of teacher.

Defendant argues Plaintiff cannot establish the fourth element because the coaches who allegedly received more favorable treatment were distinguishable based on their level of responsibility and circumstances surrounding their misconduct. Plaintiff contends coaches are

6

comparable to assistant principals because coaches have supervisory responsibility at times and are similarly used "to help with discipline [and] maintaining order" (Court File No. 18 at p. 3; Plaintiff's Depo. pp. 133-34). Plaintiff concedes, however, any claims of Baker's responsibilities are speculative because Plaintiff does not know how coaches are utilized at Ooltewah High School, where Baker was employed (Plaintiff's Depo. p. 134).

Plaintiff does not attempt to argue he was replaced by an employee outside the protected class but instead relies entirely on a similarly situated analysis to complete his prima facie case. Viewing the evidence in the light most favorably to Plaintiff, this element has not been established. To support his claim, Plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated,'" but the comparable employees must be similar "in all of the relevant aspects." *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005). These aspects may include dealing with the same supervisor, being subject to the same standards, engaging "in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Gray v. Toshiba America Consumer Prod., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff's case suffers from the obvious deficiency that an assistant high school principal is not a comparable position to a high school coach. Plaintiff has failed to offer any evidence that in the particular work environment of the HCDE those positions are comparable. Assistant principals bear responsibility at least for some function that encompasses the entire school. And obviously, the public expectations regarding the roles and responsibilities or assistant principals are higher than those for coaches.

Plaintiff has failed to raise a factual dispute he suffered less favorable treatment than similarly situated employees outside of his protected class. Plaintiff was an assistant principal and compares himself to two coaches who worked for other schools and one coach who lost his coaching stipend and was demoted to purely a teaching position. In none of the three cases does Plaintiff indicate there was a prior order to not engage in the misconduct in the future as is present in Plaintiff's case. Baker's alleged misconduct of racial epithets is distinguishable from Plaintiff's multiple incidents of aggressive behavior and Defendant was deprived of the opportunity to complete Baker's discipline because he retired. Eller was similarly accused of being rough on students, however, Eller, like Plaintiff was allowed to continue in a teaching position. Furthermore, Plaintiff's discipline was based on multiple incidents culminating in the pepper spray event in September 2007 and there is no indication Eller had a similar history of prior misconduct or had been previous warned to not engage in the conduct. In fact, Plaintiff only knows Eller lost his coaching stipend and was transferred to another school, "[i]f he had a history of doing anything before then, I'm not aware of it" (Plaintiff's Depo. pp. 130, 172). Plaintiff tries to compare himself to a third coach but can proffer no probative facts to support a claim of disparate treatment based on similar circumstances.    Even assuming there are similarities between the role of a coach and that of an assistant principal, none of the employees to which Plaintiff compares himself engaged in the same degree of misconduct for which Plaintiff was disciplined. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562 (6th Cir. 2004) ("Because none of the employees cited allegedly engaged in the range of activities for which [the plaintiff] was disciplined, no employee is similarly situated."). Furthermore, Plaintiff's attempts to point to reports of unfair treatment of an elementary school teacher or another assistant principal are also insufficient to support a claim of disparate

8

treatment. Plaintiff concedes his knowledge on these events stems from his personal feelings, the sense in the African-American community, and incidents he heard about secondhand from friends and the newspaper (Plaintiff's Depo. pp. 127-128).[2]

The Court concludes Plaintiff fails to make a prima facie case as he cannot point to probative facts showing he was treated less favorably than others similarly situated outside his protected class. For this reason, Defendant's motion for summary judgment must be granted.

**B.     Defendant's Legitimate Nondiscriminatory Reason**

Even if Plaintiff had succeeded in making a prima facie case, he would not survive the remainder of the *McDonnell Douglas* burden shifting. Based upon the submitted evidence, the Court finds Defendant has failed to establish an issue of fact that Defendant's reason for demoting Plaintiff was not legitimate and was a pretext for intentional discrimination.

Once a plaintiff has established his prima facie case, the burden then shifts to the employer to proffer a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. Defendant has satisfied this burden by presenting uncontradicted evidence Dr. Scales based his decision to demote Plaintiff on the September 2007 pepper spray incident, Plaintiff's admitted prior use of pepper spray in the spring of 2007, and his purported choking of a student in August 2007. Plaintiff argues Dr. Scales failed to properly investigate these accusations and denies his use of pepper spray in September 2007, however, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that

---

[2]That Plaintiff was allowed to transfer into a teaching position instead of being terminated apparently did not dispel Plaintiff's belief he was being unfairly treated.  Nor did the fact he received pay for the entire time of his suspension, albeit at the teacher level instead of the assistant principal level, dispel his suspicions.

9

the reason is pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Even assuming Plaintiff did not engage in discharging pepper spray, the decision to demote Plaintiff was based on the results of Dr. Scales's investigation and Plaintiff's history and was a reasonable decision in light of the facts presented. "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)).

Plaintiff has presented no evidence Dr. Scales did not honestly believe Plaintiff actually discharged the pepper spray. Nor has Plaintiff demonstrated that such a belief on Dr. Scales part was unreasonable. There was ample evidence to support such a belief.

Because Defendant meets this burden, the presumption of discrimination created by the prima facie case falls away and Plaintiff must prove by a preponderance of the evidence Defendant's legitimate nondiscriminatory reason was merely a pretext for discrimination.

**C.  Pretext**

Plaintiff cannot establish a prima facie case, furthermore, even assuming he *could* raise an issue of fact on the disparate treatment element, summary judgment is appropriate on the issue of pretext. To establish the Defendant's reason was pretext, Plaintiff must generally show the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)(en banc). Plaintiff "must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendants intentionally discriminated against him." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586

(6th Cir. 2009).

Plaintiff was demoted based on the findings of a considerable investigation. Even construing Plaintiff's claim of the purely coincidental timing between his waving of a "prop" and someone else's actual release of pepper spray as plausible, Plaintiff's evidence could not support a finding "discrimination was the real reason" for his demotion. *Upshaw*, 576 F.3d at 586. As discussed above, Plaintiff's basis for arguing racial discrimination is based on what he describes as the feelings in the African-American community,[3] his own personal beliefs and secondhand knowledge from newspaper articles. *See* Plaintiff's Depo. p. 125 ("I feel that Dr. Scales is out of touch with African-Americans, teachers, and anyone else for that matter. That's personal. That's how I feel. And yes, it's a gut feeling. And it's all based on what happened to me and what I've seen happen to others.").

Plaintiff himself actually provides testimony negating an inference of racial discrimination. Plaintiff asserts his grievance against Colbert and Dr. Scales is due to the fact they made a hasty decision, not that this decision was based on Plaintiff's race (Plaintiff's Depo. pp. 114-115). When asked if Dr. Scales's mistaken belief about Plaintiff was due to race, Plaintiff responds "No, I don't think he did it just because I'm black, no" (*id*. p. 124). Plaintiff's response to questioning about the potential bias Colbert may have toward African-Americans is "I never put forth that he was biased against African-Americans. My complaint was he was biased against me" (*id.* pp. 111-112). Plaintiff later elaborates on these statements and indicates he is aware of other African-Americans where such a rush to judgment occurred (*id.* at 115) but does not support his claim with anything more than his own allegations.

---

[3]Obviously this is merely Plaintiff's opinion. No poll results or other scientific evidence was introduced to demonstrate the feelings in the African-American community or that these "feeling" coincide with Plaintiff's opinions.

11

Plaintiff has failed to present any significant probative evidence to raise an issue of fact as to the motivation for his demotion. Even if he could establish a prima facie case, summary judgment is appropriate on the issue of pretext because no fair-minded jury could find Plaintiff was demoted as a result of intentional discrimination.

**IV.     CONCLUSION**

Having considered the parties' submissions and evidence in the record, and for the reasons stated above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 14).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**